**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **Martha Magali GOMEZ ALVARADO,** | ) | |
| **Individually and as next friend of T.L.;** | ) | |
| **Guadalupe Israel GOMEZ ALVARADO;** | ) | |
| **Aracel Adonaida GONZALEZ PEREZ,** | ) | |
| **Individually and as next friend of A.P.G.,** | ) | |
| **A.G.G., A.M.G.G., and L.G.G.,** | ) | **No. 3:18-cv-589** |
| | ) | |
| **Plaintiffs,** | ) | **Judge Jack Zouhary** |
| **v.** | ) | |
| | ) | **Magistrate Judge James R. Knepp, II** |
| **Officer Jason BEARD and Officer Nathan** | ) | |
| **KAUFMANN, in their individual capacities,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF QUALIFIED IMMUNITY

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs Martha Gomez Alvarado,

Guadalupe Gomez Alvarado, Aracel Gonzalez Perez, T.L., A.P.G., A.G.G., A.M.G.G., and

L.G.G., hereby respond in opposition to Defendants Beard and Kaufmann's motion for summary

judgment. Summary judgment is inappropriate on all of Plaintiffs' claims because there are

disputed issues of material fact on all three claims that must be decided by a jury.

Respectfully submitted,

*/s/ Emily Brown*
Emily Brown
Mark Heller
Kathleen Kersh
Advocates for Basic Legal Equality, Inc.
525 Jefferson Ave, Suite 300
Toledo, OH 43604
Telephone: 631.897.9699
Facsimile: 419.259.2880
Email: ebrown@ablelaw.org
mheller@ablelaw.org
kkersh@ablelaw.org

# TABLE OF CONTENTS

Table of Authorities……………………………………………………………………………iii

Certification Pursuant to Rule 7.1(f)……………………………...…………………………………vi

Questions Presented………………………………………………..…………………………vii

Memorandum in Support……………………………………………….……………………1

    I.     Background…………………………………………………………………………1

    II.    Legal Standard for Summary Judgment and Qualified Immunity……………………2

    III.   Argument……………………………………………………………………………...3

           A. Officers Beard and Kaufmann are not entitled to qualified immunity on Plaintiffs Fourth Amendment claim because it is clearly established law that officers cannot detain individuals longer than reasonably required to issue them a ticket for a criminal violation unless officers uncover new facts to establish probable cause of another crime…………………………..…………………………..………………………3

           B. Officer Beard is not entitled to qualified immunity on Plaintiff Aracel Gonzalez Perez's Unlawful Search and Seizure Claim…………………………10

               1. There is a disputed issue of material fact whether the search of the car and seizure of items within were consensual……………..…11

               2. If the search and seizure were not consensual, which the Court must assume for purposes of deciding Defendants' motion for summary judgment since the material facts are contested, Officer Beard is not entitled to qualified immunity because it is clearly established that Aracel Gonzalez Perez had a reasonable expectation of privacy in the items within her car and that Officer Beard did not have probable cause and a warrant for the search and seizure………………………12

           C. Officer Beard is not entitled to qualified immunity on Plaintiffs' Fourteenth Amendment Equal Protection Clause claim……………………………………..15

    IV.   Conclusion………………………………………………………………...……19

**TABLE OF AUTHORITIES**

Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)…………………………………………2, 3

*Arizona v. Gant*, 556 U.S. 332 (2009)……………………………………………..……………15

*Arizona v. Johnson*, 555 U.S. 323 (2009)……………………………………………..…..…..6

*Arizona v. United States*, 567 U.S. 387 (2012)……………………………………....…passim

*Arkansas v. Sanders*, 442 U.S. 753 (1979)……………………………………..……………..15

*Bennett v. City of Eastpointe*, 410 F.3d 810 (6th Cir. 2005)…………………………….…….2, 19

*Byrd v. United States*, 138 S.Ct. 1518 (2018). ……………………………………..…...14-15

*Carrasca v. Pomeroy*, 313 F.3d 828 (3d Cir. 2002)……………...……………………...…………19

*Carroll v. United States*, 267 U.S. 132 (1925)……………...……………………………15

*Carver v. City of Cincinnati*, 474 F.3d 283 (6th Cir. 2007)………………………………………3

*Cummings v. City of Akron*, 418 F.3d 676 (6th Cir. 2005)………………………………………..2

*Daughtrey v. Campbell*, 935 F.2d 780 (6th Cir. 1991) …………………………….…………..8

*Farm Labor Org. Cmte. v. Ohio State Hwy Patrol*, 308 F.3d 523 (6th Cir. 2002)………16, 17, 18

*Feathers v. Aey*, 319 F.3d 843 (6th Cir. 2003)……………………………………………8

*Fowler v. Carrollton Pub. Library*, 799 F.2d 976 (5th Cir. 1986)……………………..……..18

*Futernick v. Sumpter Twp.*, 78 F.3d 1051 (6th Cir. 1996))…………………………..………..16

*Gardenhire v. Schubert*, 205 F.3d 303 (6th Cir. 2000)………………………………………15, 16

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)……………………………………………………..2

*Katz v. United States*, 389 U.S. 347 (1967)…………………………………...……….8, 14

*King v. City of Eastpointe*, 86 F. App'x 790 (6th Cir. 2003)…………………………………19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)……………..……….2

iii

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012)……………………………..………………10

*Minnesota v. Dickerson*, 508 U.S. 366 (1993)……………………………………………...…14

*Muehler v. Mena*, 544 U.S. 93, 100 (2005)…………………………………….………4, 5

*Ohio Civil Serv. Emp. Assoc. v. Seiter*, 858 F.2d 1171 (6th Cir. 1988)……………….……8

*Pennsylvania v. Labron*, 518 U.S. 938 (1996)………………………..……………………15

*Quigley v. Tuong Vihn Thai*, 707 F.3d 675 (6th Cir. 2013)………………………………..2,3

*Rodriguez v. United States*, 135 S. Ct. 1609 (2015)…………………………………..…4, 10

*Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451 (4th Cir. 2013)………………..…10

*Schroder v. Maumee Board of Education*, 296 F. Supp. 869 (N.D. Ohio 2003)…………..……19

*Stemler v. City of Florence*, 126 F.3d 856 (6th Cir. 1997)……………………………..…16, 17

*Terry v. Ohio*, 392 U.S. 1 (1968)……………………………………………………8

*United States v. Avery*, 137 F.3d 343 (6th Cir. 1997)……………………………………16

*United States v. Chadwick*, 433 U.S. 1 (1977)..………………………….……………..…14

*United States v. Ellison*, 462 F.3d 557 (6th Cir. 2006)……………………………………8

*United States v. Gooch*, 499 F.3d 596 (6th Cir. 2007)………………………...……14

*United States v. Herndon*, 501 F.3d 683 (6th Cir. 2007)……………………...………………14

*United States v. Llanez-Garcia*, No. 1:11-cr-177, 2011 U.S. Dist. LEXIS 89165
(N.D. Ohio Aug 11, 2011)…………………………………………………….......7, 8

*United States v. Ovando-Garzo*, 752 F.3d 1161 (8th Cir. 2014)…………………………….7

*United States v. Place*, 462 U.S. 696 (1983)…………………………………...8, 12, 13

*United States v. Salinas-Calderon*, 728 F.2d 1298 (10th Cir. 1984)…………………………..8

*United States v. Urrieta*, 520 F.3d 569 (6th Cir. 2008)………………………….……7, 9

*United States v. Williamson*, No. 3:11-cr-155, 2011 U.S. Dist LEXIS 119704
(N.D. Ohio Oct. 17, 2011)………………………………………………..…………..…6, 8

*Valdez v. United States*, 58 F. Supp. 3d 795 (W.D. Mich. 2014)…………………………………8

*Wayne v. United States*, 470 U.S. 598 (1985)……………………………………………………16

*Whren v. United States*, 517 U.S. 806 (1996)……………………………………………………16

*Yoc-US v. AG United States*, Nos. 18-1520/18-1521, 2019 U.S. App. LEXIS 22736
(3d Cir. July 31, 2019)…………………………………………………………………………...10

<u>Statutes</u>

8 U.S.C. § 1357(g)(10)(A)………………………………………..…………………………5

42 U.S.C. § 1983…………………………………………………………………..………………2

Ohio Rev. Code § 1533.32………………………………………..…………………4

Ohio Rev. Code § 2921.29………………………………………………...………………1, 9

<u>United States Constitution</u>

Fourteenth Amendment……………………………………………………………………15

Fourth Amendment……………………………………………………………………passim

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(f), the undersigned, as Counsel of Defendants Jason Beard and

Nathan Kaufmann, hereby certifies that this is a General Civil Case on the Standard Track and

that Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment complies

with this Court's June 13, 2019 (Dkt. 43) order and in all other respects complies with Local

Rule 7.1(f).


*/s/ Emily Brown*
Emily Brown (0092553)

# QUESTIONS PRESENTED

1.  Are there any disputed material facts as to whether Defendants Beard and Kaufmann violated Plaintiffs' clearly established constitutional rights to be free from unlawful detention when they held Guadalupe Gomez Alvarado, Martha Gomez Alvarado, Aracel Gonzalez Perez, and all five minor Plaintiffs past the time needed to complete a citation to Guadalupe for fishing without a license without probable cause or reasonable suspicion of any other criminal offense?

2.  Is there a dispute of material fact as to whether Defendant Beard violated Plaintiff Aracel Gonzalez Perez's clearly established constitutional right to be free from unlawful search and seizure when they searched Plaintiff's car and seized items in it without consent?

3.  Is there a dispute of material fact as to whether Defendant Beard violated Plaintiffs' clearly established constitutional right to equal protection of the law when he stopped Plaintiffs for fishing without a license on the basis of their race?

<u>**MEMORANDUM IN SUPPORT**</u>

## I.  BACKGROUND

Per the Court's instruction at the June 12, 2019 record hearing, Plaintiffs refer to the facts section in their May 24, 2019 letter, which the Court has made part of the record, and will not recite the relevant facts again here. (*See* Dkt. 43-2 at 2-4.)  For the Court's convenience, Plaintiffs also attach all exhibits referenced in that letter, with the exception of the deposition transcripts which have been filed separately.  (*See* Exhibit 1, Case Report; Exhibit 2, Officer Narrative Attachment; Exhibit 3, Case Details.)

Plaintiffs do want to emphasize the following facts from the record which they did not discuss in their May 24, 2019 letter.  When Defendant Beard initially detained Plaintiffs, he asked for and received a non-government issued photo identification from Guadalupe (Aracel also informed him her government-issued foreign passport was in her car).  (Beard Dep., Dkt. 46-1 at 100, 104-05.)  He did not then ask Plaintiffs their names or dates of birth.  (*Id.*)  Under Ohio law, Plaintiffs would have been required to provide their names, dates of birth, and address *if* they were suspected of committing a criminal offense.  Ohio Rev. Code § 2921.29.  Moreover, Officers Beard and Kaufmann testified that they would use a name and date of birth if they wished to run a check through a law enforcement database.  (Beard Dep., Dkt. 46-1 at 139; Kaufmann Dep., Dkt. 48-1 at 79.) But instead of asking for this information (which in Guadalupe's case, was on the non-state issued netID card he provided), he immediately asked if they were "illegals."  (Beard Dep., Dkt. 46-1 at 101.)  Additionally, while Defendants' motion for summary judgment contends that Beard was "instructed" by the Border Patrol to detain Plaintiffs, Def's Mot. for Summ. J., Dkt. 49 at 4, Beard states in his declaration that Border Patrol "requested that [he] hold Plaintiffs at the scene until border patrol agents arrived," Dkt. 49,

Beard Declaration at ¶ 15, and Beard also never stated in his deposition that Border Patrol "instructed" or ordered Defendants to continue to detain the Plaintiffs. Finally, Defendant Beard testified he did not have either reasonable suspicion or probable cause to believe Plaintiffs had committed any crime other than fishing without a license. (Beard Dep., Dkt. 46-1 at 154.)

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT AND QUALIFIED IMMUNITY

A court may grant summary judgment only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant must show that no genuine issue of material fact exists, viewing all evidence in the light most favorable to the nonmoving party, and drawing all justifiable inferences in the nonmoving party's favor. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Summary judgment is appropriate "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Cummings v. City of Akron*, 418 F.3d 676, 682 (6th Cir. 2005) (citation, quotation marks and alterations omitted).

In the performance of discretionary functions, government officials are immune from standing trial for civil liability unless their actions violate clearly established rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In bringing a claim under 42 U.S.C. § 1983 against a government official, it is the plaintiff's burden to show that the official is not entitled to qualified immunity. *Quigley v. Tuong Vihn Thai*, 707 F.3d 675, 681 (6th Cir. 2013). To overcome a defendant's motion for summary judgment on grounds of qualified immunity, a plaintiff must show that: (1) the defendant violated a constitutional right; and (2) that right was clearly established. *Id.* at 680. The evidentiary burden for that showing at the summary judgment phase requires sufficient evidence to create a "genuine issue of fact," that is, "evidence on which [a]

jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the district court determines that a reasonable jury, looking at the plaintiff's evidence, could find that the defendant violated a clearly established right, then summary judgment is inappropriate. *Quigley*, 707 F.3d at 681.

In order to meet the "clearly established" prong of the qualified-immunity inquiry, "it must be clear to a reasonable officer that his conduct is unlawful." *Carver v. City of Cincinnati*, 474 F.3d 283, 287 (6th Cir. 2007). Case law from either the Supreme Court or the Sixth Circuit may establish that the conduct is unlawful. *Id.*

### III. ARGUMENT

A. *Officers Beard and Kaufmann are not entitled to qualified immunity on Plaintiffs' Fourth Amendment Claim because it is clearly established law that officers cannot detain individuals longer than reasonably required to issue them a ticket for a criminal violation unless officers uncover new facts to establish probable cause of another crime*

Defendants repeatedly mischaracterize Plaintiffs' Fourth Amendment prolonged-detention claim as a challenge to their decisions to communicate with Border Patrol or to question Plaintiffs about their immigration status. It is neither. Rather, Plaintiffs contend that Defendants Beard and Kaufmann violated their constitutional rights by detaining them without probable cause of a crime for over an hour and a half until the Border Patrol arrived at the reservoir.

To be more specific, Defendants' prolonged detention of Plaintiffs Aracel Gonzalez Perez, Martha Gomez Alvarado, and the five minor Plaintiffs lacked probable cause or reasonable suspicion from the moment that they were detained by Defendant Beard until the moment the Border Patrol arrived and took Plaintiffs into Border Patrol custody. And Defendant Beard's detention of Plaintiff Guadalupe Gomez Alvarado, which may have been initially justified by the fourth-degree misdemeanor violation of fishing without a license in violation of

Ohio Revised Code § 1533.32, was unconstitutionally prolonged because: 1) it does not take an hour and thirty-five minutes to write a ticket for fishing without a license (as Defendants acknowledge); 2) Defendants did not engage in any investigation during this time period that would have justified the lengthened detention; and 3) Defendants uncovered no new facts that would lead to suspicion or probable cause of a <u>new</u> criminal offense during this time. Defendant Beard acknowledged that he did not have reasonable suspicion or probable cause of any crimes other than the initial fishing without a license misdemeanor. (Beard Dep., Doc. 46-1, p. 154.) It is clearly established law that "[a] seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Rodriguez v. United States*, 135 S. Ct. 1609, 1612 (2015) (alterations in original) (holding that a seven- or eight-minute extension of a traffic stop to conduct a dog sniff is unreasonable if the officer did not have reasonable suspicion of criminal activity).

The case law Defendants cite further confuses the distinction between Defendants' right to detain Plaintiffs without probable cause, and issues related to the legality and propriety of contacting Border Patrol and sharing information with the agency. This case is about the former, not the latter.

First, Defendants seem to suggest that because "mere questioning" about a plaintiff's immigration status does not on its own constitute a seizure under *Muehler v. Mena*, 544 U.S. 93, 100 (2005), the entire period of detention is rendered lawful. This is not so. In *Muehler*, the initial stop and detention of the plaintiff was lawful as a detention incident to the execution of a search warrant for gang activity and illegal weapons, and therefore the seizure itself was lawful. *Id.* The Supreme Court specifically noted that the Court of Appeals had not held that the

4

detention was prolonged by the questioning and therefore noted that the officers did not need reasonable suspicion to ask about name, date of birth, or immigration status. *Id*. at 101. By contrast, Plaintiffs make no contention here that the questioning about immigration status was improper for Fourth Amendment purposes; instead, Plaintiffs have shown that they were seized and remained not free to leave for over an hour and a half absent any probable cause of a criminal violation. In fact, Officer Beard admitted in his deposition that none of the Plaintiffs were free to leave after he gestured and told them to come down the stairs of the reservoir and sit in the grassy area next to the parking lot. (Beard Dep., Dkt. 46-1 at 107.)

Defendants' argument that they had "at a minimum, reasonable suspicion of a potential violation of Ohio law for both Martha and Aracel" (Def's Mot. for Summ. J., Dkt. 49 at 9) is flatly contradicted by the evidence that Aracel was not fishing at any point and that Martha was playing around with a line in the water without a hook for her daughter's amusement. (*See* Kaufmann Dep., Dkt. 48-1 at 68 (acknowledging no investigation or interview of Aracel for fishing without a license), 107-08 (acknowledging he usually puts information regarding suspects interviewed but not cited when he completes an investigatory case report, and admitting that he did not write anything about Martha or Aracel in the report); Guadalupe Gomez Alvarado ("Guadalupe") Dep., Dkt. 44-1 at 21; Martha Gomez Alvarado ("Martha") Dep., Dkt. 45-1 at 28; Aracel Gonzalez Perez ("Aracel") Dep., Dkt. 52-1 at 19-20 (all stating that Aracel was holding her baby and was not fishing and that Guadalupe, not Aracel, held the bag of fishing supplies).)

Although Defendants lean heavily on *Arizona v. United States* for the proposition that state law enforcement officers are permitted to "communicate with the [federal government] regarding the immigration status of any individual," 567 U.S. 387, 411 (2012) (citing 8 U.S.C. § 1357(g)(10)(A)), this misses the crux of the holding in *Arizona* and its direct application to

Plaintiffs' Fourth Amendment claim. Plaintiffs don't contend that information sharing is unconstitutional. But the Supreme Court raised two concerns about "[d]etaining individuals solely to verify their immigration status." *Id.* at 413. First, because "it is not a crime for a removable alien to remain present in the United States," *id.* at 407 (citation omitted), "the usual predicate for an arrest is absent" where an officer stops someone based on possible removability," *id.* Even if an initial stop is lawful, "delay[ing] the release of some detainees for no reason other than to verify their immigration status" would "raise constitutional concerns." *Id.* at 413 (citing *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)). The Court noted in *Arizona* that detention based only on removability "would disrupt the federal framework" established by Congress. *Id.* "Congress has put in place a system in which state officers may not make warrantless arrests of aliens based on possible removability except in specific, limited circumstances." *Id.* at 410. Put simply, state and law enforcement officers may prolong detention if they have probable cause of a *criminal* violation, not a civil immigration violation. The Ohio Attorney General has also recognized this principle. *See* Exhibit 4, 2007 Ohio Op. Atty. Gen. 2-300 (Ohio A.G.), 2007 Ohio Op. Atty. Gen. No. 2007-029 (Ohio A.G.), 2007 WL 2700588 (Ohio A.G.).

None of the cases Defendants cite conflict with the critical holding in *Arizona* that state law enforcement officers may not "delay the release" of detainees to enforce civil immigration law. *See, e.g.*, *United States v. Williamson*, No. 3:11-cr-155, 2011 U.S. Dist LEXIS 119704, at *9-11 (N.D. Ohio Oct. 17, 2011) (acknowledging that since the stop was lawful, the constitutionality of the detention turned on whether the questioning was "no longer than necessary to effectuate the purpose of the stop" and concluding it did not because the routine records check yielded an alien smuggling charge, providing probable cause of a criminal offense,

and the Border Patrol arrived on scene within ten minutes); *United States v. Llanez-Garcia*, No. 1:11-cr-177, 2011 U.S. Dist. LEXIS 89165, at *5-6 (N.D. Ohio Aug 11, 2011) (finding prolonged detention after initial lawful stop was constitutional because multiple signs of alien smuggling established probable cause for alien smuggling, including the fact that the passengers did not know each other and had traveled across the country together and were acting nervous and fidgety, and noting safety issues with the fact that none of the passengers could legally drive the car off the highway and thus they would have been stranded on the interstate); *United States v. Ovando-Garzo*, 752 F.3d 1161, 1164-65 (8th Cir. 2014) (officer performed community caretaking function of removing passengers from highway after initial lawful stop because they did not have a driver's license and the freezing temperatures and unsafe conditions gave the officer no other option).

And indeed, the Sixth Circuit, in a case decided before *Arizona*, has also clearly established this principle. Although Defendants argue that *United States v. Urrieta* is inapplicable, the facts of the detention in *Urrieta* are remarkably similar to those here, albeit arising in the context of a traffic stop rather than a stop on foot. 520 F.3d 569 (6th Cir. 2008). (*See* Pls. Letter Outlining Summary Judgment Positions, Dkt. 43-2 at 7-8 for discussion of *Urrieta*.) Unsurprisingly, Defendants do not grapple with the facts of *Urrieta* but instead try to rescue their argument by, first, distinguishing *Urrieta* because it arose in a motion to suppress rather than a qualified-immunity case, and second, by contending that the principle established in *Urrieta* that "new facts uncovered during the course of a lawful stop can be a basis for extending the initial stop" is inapplicable here because the "new facts" of Plaintiffs' "lack of identification" and unlawful presence in the United States were uncovered during the course of the stop. (Def's Mot. for Summ. J., Dkt. 49 at 12-13.)

As to the first point, it is immaterial that *Urrieta* concerned a motion to suppress, because the Fourth Amendment constitutional principles are the same, and courts routinely hold that to satisfy the "clearly established" prong of the qualified-immunity inquiry, the Supreme Court or controlling circuit court need only have decided that a particular set of facts constitutes unconstitutional conduct, not that the claims both arise under Section 1983. *See, e.g.*, *Feathers v. Aey*, 319 F.3d 843, 850-51 (6th Cir. 2003) (conducting qualified-immunity analysis of whether *Terry v. Ohio*, 392 U.S. 1 (1968), a suppression case, was clearly established law); *Daughtrey v. Campbell*, 935 F.2d 780, 784 (6th Cir. 1991) (conducting qualified-immunity analysis of whether the suppression case *Katz v. United States*, 389 U.S. 347 (1967), was clearly established law), *Ohio Civil Serv. Emp. Assoc. v. Seiter*, 858 F.2d 1171, 1172-73 (6th Cir. 1988) (same).   And in fact, Defendants essentially acknowledge that criminal cases addressing motions to suppress for constitutional violations can serve as clearly established law when it cites a multitude of cases in its brief that arose in the context of motions to suppress. *See, e.g.*, *United States v. Williamson*, No. 3:11-cr-155, 2011 U.S. Dist Lexis 119704 (N.D. Ohio Oct. 17, 2011); *United States v. Place*, 462 U.S. 696 (1983); *United States v. Salinas-Calderon*, 728 F.2d 1298 (10th Cir. 1984); *United States v. Ellison*, 462 F.3d 557 (6th Cir. 2006); *United States v. Llanez-Garcia*, No. 1:11-cr-177, 2011 U.S. Dist. LEXIS 89165 (N.D. Ohio 2011); *Valdez v. United States*, 58 F. Supp. 3d 795, 825 (W.D. Mich. 2014). (*See* Def's Mot. for Summ. J., Dkt. 49 at 8, 11, 14, 15, 19.)

As to the second point, it is true that new facts uncovered during a stop can be a basis for its extension—but only insofar as those new facts provide the basis for probable cause of a crime.   Neither failing to carry government-issued identification when on foot in a reservoir, nor unlawful presence in the United States, is a crime. *See Arizona*, 567 U.S. at 407 ("As a general rule, it is not a crime for a removable alien to remain present in the United States.").   Therefore,

no new facts *were* uncovered during the course of Officers Beard and Kaufmann's investigation that provided probable cause or reasonable suspicion of any criminal offense. Defendant Beard admitted as much. (Beard Dep., Doc. 46-1, p. 154.)

Although Defendants argued that the detention was prolonged only because they needed to verify the identity of the Plaintiffs (or, presumably, of Guadalupe since he is the only one they ticketed), the evidence belies this notion. After Guadalupe presented an expired photo identification that was not issued by a state (Aracel later presented a current and valid Guatemalan passport), Defendant Beard did not ask any of the Plaintiffs their names, addresses and dates of birth (or confirm the information listed on Guadalupe's expired document), *see* Ohio Rev. Code § 2921.29, which he testified was the data necessary to run through the criminal investigation databases available to him, but rather immediately asked them if they were illegally present in the U.S. (a civil offense). (Beard Dep., Dkt. 46-1 at 103, 138-39.) *Urrieta* controls this case, because there the Sixth Circuit held that new facts about an individual's immigration status—not a criminal offense—did not suffice to prolong the detention beyond the time needed to issue a citation for the initial traffic offense. *See* 520 F.3d at 578-79 (noting that even the prolonged detention of six minutes while the officer held onto the citation violated the defendant's constitutional rights because "to detain a motorist any longer than is reasonably necessary, an officer must have a reasonable suspicion that the individual has engaged in more extensive criminal conduct"). (Beard Dep., Dkt. 46-1 at 154 (acknowledging he had no reasonable suspicion or probable cause of any new criminal activity).)

None of the out-of-circuit cases or district court cases Defendants cite carry the weight of *Arizona* and *Urrieta*, on which this case ultimately turns. Moreover, many other circuits have held that *Arizona* clearly establishes the principle that state law enforcement officers cannot

detain individuals solely on the basis of their unlawful presence or any other civil immigration violation. *See, e.g.*, *Yoc-US v. AG United States*, Nos. 18-1520/18-1521, 2019 U.S. App. LEXIS 22736, at *13-14 (3d Cir. July 31, 2019) (thirty-three minute detention was unlawful because it extended "beyond the time reasonably required to complete the mission of issuing a ticket for the violation" and no officer safety concerns or other criminal activity were detected) (quoting *Rodriguez*, 135 S.Ct. at 1614); *Santos v. Frederick Cnty. Bd. of Comm'rs*, 725 F.3d 451, 466-67 (4th Cir. 2013) (unlawful presence does not establish reasonable suspicion or probable cause to detain an individual pending local officials' transport of that individual to Immigration and Customs Enforcement); *Melendres v. Arpaio*, 695 F.3d 990, 1000 (9th Cir. 2012). Nor can Defendants save their case by arguing that it was for the Plaintiffs' safety—because the Willard Reservoir is located on a two-lane state highway—that they refused to allow them to leave the scene. The Reservoir is a public recreation area used for boating, fishing, and walking on a perimeter trail. (Beard Dep., Dkt. 46-1 at 69-70; Guadalupe Dep., Dkt. 44-1 at 28; Dkt. 52-3 at 1 (map of Reservoir).) Plaintiffs testified repeatedly that they asked the officers for permission to call Guadalupe's supervisor, a licensed driver, who could come pick them up and transport them home, but Officer Beard refused to allow them to do so. (Guadalupe Dep., Dkt. 44-1 at 47, 53-54, 68, 72; Martha Dep., Dkt. 45-1 at 61-62.) The Court should deny Defendants' motion for summary judgment on this claim because Defendants uncovered no new facts leading to probable cause of any other crime during the time reasonably necessary to investigate and cite Guadalupe for fishing without a license. *See Urrieta*, 520 F.3d at 578-79.

   B. *Officer Beard is not entitled to qualified immunity on Plaintiff Aracel Gonzalez Perez's Unlawful Search and Seizure Claim.*

   Defendant mischaracterizes the record evidence in arguing that there is no dispute of material fact on Plaintiff Aracel Gonzalez Perez's claim regarding the unlawful search of her car

and seizure of objects within. The issue of whether Officer Beard had consent at any stage of the search of the car and seizure of objects within it is without question disputed. Taking the facts in the light most favorable to Plaintiffs as the court must do at this stage, Officer Beard did not receive consent; therefore, the court should deny qualified immunity on this claim because it is clearly established that a warrantless search of an automobile and seizure of a purse and its contents violate the Fourth Amendment.

1. **There is a disputed issue of material fact whether the search of the car and seizure of items within were consensual.**

The record shows that although Officer Beard testified that he asked for consent and received it at each step—eight times in total (Beard Dep., Dkt. 46-1 at 132-36)—the Plaintiffs testified that they gave no such consent, and specifically that: 1) Aracel gave the keys to her car to Martha so she could get a milk bottle for Aracel's youngest daughter (Martha Dep., Dkt. 45-1 at 38; Guadalupe Dep., Dkt. 44-1 at 51); 2) Officer Beard did not permit Martha to go to the car without his accompanying her while Officer Kaufmann held the rest of the Plaintiffs (Beard Dep., Dkt. 46-1 at 112; Beard Decl., Dkt. 49, Ex. A at ¶¶ 18-19; Martha Dep. Dkt. 45-1 at 38; Guadalupe Dep., Dkt. 44-1 at 51); 3) Officer Beard did not permit Martha to open the car but instead directed her to give him the keys so he could open it (Martha Dep., Dkt. 45-1 at 39); 4) Officer Beard took the bottle and the purse out of the car without asking for or obtaining Martha or Aracel's consent (*id.*); and 5) Officer Beard took a wallet out of the purse and then removed Aracel's passport from the wallet and kept the passport until he gave it to the Border Patrol, again without her consent. (Beard Dep., Dkt. 46-1 at 134, 136; O'Brien Dep., Dkt. 53-1 at 9.) At the summary-judgment stage, a factual dispute about whether Officer Beard asked for consent to take the car keys, open the car door, take the bottle from the car, take the purse from the car, open the purse, take out the wallet from the purse, open the wallet, and remove and hold onto the

passport qualifies as material. Because consent is disputed, summary judgment is inappropriate because it is clearly established that a warrantless search and seizure of personal property inside a car, absent any indication of contraband or illegal activity, violates the Fourth Amendment.

**2. If the search and seizure were not consensual, which the Court must assume for purposes of deciding Defendants' motion for summary judgment since the material facts are contested, Officer Beard is not entitled to qualified immunity because it is clearly established that Aracel Gonzalez Perez had a reasonable expectation of privacy in the items within her car and that Officer Beard did not have probable cause and a warrant for the search and seizure.**

The Supreme Court has repeatedly held that "a seizure of personal property" is "per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant within the meaning of the Fourth Amendment." *United States v. Place*, 462 U.S. 696, 701 (1983). Defendant unsuccessfully tries to analogize the seizure in this case to the one in *Place*, where the Supreme Court held that "some brief detentions of personal effects may be so minimally intrusive of Fourth Amendment interests that strong countervailing governmental interests will justify a seizure based *only* on specific articulable facts that the property contains contraband or evidence of a crime." *Id.* at 706 (emphasis added). But Defendants do not cite, nor can they, any "strong countervailing governmental interests" here and they certainly have put forward no "specific articulable facts that the property contains contraband or evidence of a crime," unlike the luggage in *Place*, which the officer had reason to believe contained narcotics, and which the Court thus found justified a brief dog sniff of the luggage. *Id.* (holding that temporary detention of luggage for exposure to trained narcotics detection dog did not run afoul of the Fourth Amendment, although 90-minute detention of luggage did).

Defendants' only proffered governmental interest here is officer safety, suggesting that there could have been weapons in Plaintiffs' car. (Def's Mot. for Summ. J., Dkt. 49 at 15-16.)

This argument is unavailing. Officer Beard testified that there was nothing in the car that raised suspicion. (Beard Dep., Dkt. 46-1 at 135.) Both Officers Beard and Kaufmann acknowledged that the Plaintiffs were caring for multiple young children, had no weapons, never made any suspicious gestures or verbal threats of any kind, and never gave the officers a reason to pat the Plaintiffs down; indeed, they stated they never had any fear of the Plaintiffs for any reason during the stop. (*Id.* at 150-151; Kaufmann Dep., Dkt. 48-1 at 88-89.) And despite the justification proffered in Defendants' motion, neither Officer Beard's actions at the car nor his deposition testimony indicate an officer safety motivation; first, in his deposition he did not cite his safety as an explanation for his actions at the car (*see* Beard Dep., Dkt. 46-1 at 129-36), and second, his actions—grabbing the bottle, then grabbing a purse, opening the purse, pulling out a "checkbook-type wallet" that would have been too small to contain a weapon, opening the wallet, pulling out a passport, and holding onto that passport—despite the fact that there was no suspicion that Aracel had committed any crime—to give to Border Patrol, goes far beyond any kind of scan for officer safety. (*Id.* at 132-37; O'Brien Dep., Dkt. 53-1 at 59 (stating that "one of" the Defendants had given him a passport).)

Additionally, all testimony indicates that the purpose of Martha and Officer Beard's trip to the car was to get a bottle for the crying baby; nowhere do any of the Plaintiffs suggest that they gave permission to Officer Beard to search the car for any other objects or to retrieve any other items therein besides the bottle, and Officer Beard acknowledges that he went to the car with Martha for the purpose of retrieving the bottle. (Beard Dep., Dkt. 46-1 at 129-30; Guadalupe Dep.., Dkt. 44-1 at 51; Martha Dep., Dkt. 45-1 at 38.)

Defendants' arguments that no seizure occurred because the plain view doctrine applies and/or because Aracel had no constitutionally protected right of privacy in the items in her car

are similarly unavailing.  The text of the Fourth Amendment itself cites individuals' "effects" as protected, and the Supreme Court has repeatedly held that people have an interest in the "contents" of their "personal luggage," which Aracel's purse surely is.  *See Place* (citing *United States v. Chadwick*, 433 U.S. 1, 13 (1977)).

First of all, contrary to Defendants' assertion, the plain view exception to the warrant requirement does not apply here.  The plain view doctrine allows officers to seize an object without a warrant if they "are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object."  *United States v. Herndon*, 501 F.3d 683, 692 (6th Cir. 2007) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)); *see also United States v. Gooch*, 499 F.3d 596, 603-04 (6th Cir. 2007) (holding plain view doctrine applied when police saw gun in car and confirmed that owner of car did not have gun license, thus providing probable cause of an illegal gun possession crime).  Again, Defendants have not presented any evidence to suggest that Aracel's purse, the wallet within it, the passport within that, or the milk bottle, had "incriminating character."  *Id.*

Second, the contents of Aracel's purse were not "knowingly expose[d] to the public." *Katz v. United States*, 389 U.S. 347, 351-52 (1967) ("What he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.")  The Supreme Court has repeatedly held that "[o]ne who owns and possesses a car, like one who owns and possesses a house, almost always has a reasonable expectation of privacy in it."  *Byrd v. United States*, 138 S.Ct. 1518, 1527 (2018).  Individuals are entitled to Fourth Amendment protection of items inside their cars, subject to a few delineated exceptions.  *See Arkansas v. Sanders*, 442 U.S. 753, 766 (1979) (absent exigent circumstances, warrantless search of personal luggage in an

automobile violates the Fourth Amendment); *Byrd*, 138 S.Ct at 1531 (even a lawful possessor of a rental car has a reasonable expectation of privacy in the car).

Like the plain view exception, all these exceptions require officers to have probable cause of some kind of criminal activity or contraband. *See, e.g.*, *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (if the car is readily mobile and there is evidence of contraband, warrantless search permitted), *Carroll v. United States*, 267 U.S. 132, 162 (1925) (evidence of contraband); (hot pursuit) *Arizona v. Gant*, 556 U.S. 332, 335 (2009) (search incident to arrest). Again, Defendants have not testified to any suspicion of contraband inside Aracel's purse or wallet. Tellingly, Defendants do note cite any case to support their contention that a person does not have a reasonable expectation of privacy in a purse inside a car when there is no evidence of contraband or probable cause of any crime, presumably because there is no such case. The Court should deny Defendants' motion for summary judgment on Plaintiff's unlawful search and seizure claim because there is a material dispute as to whether Officer Beard had consent to search the car and seize the purse, wallet, and passport, and it is clearly established that a person has a reasonable expectation of privacy in a purse inside her own car when there is no probable cause of any criminal activity or contraband. *Sanders*, 442 U.S. at 766.

C. *Officer Beard is not entitled to qualified immunity on Plaintiffs' Fourteenth Amendment Equal Protection Clause claim.*

Plaintiffs' final claim, against only Officer Beard, concerns the constitutionality of the initial stop of Plaintiffs, which Plaintiffs contend violated their rights under the Equal Protection Clause because it was motivated by race. It was clearly established law at the time of the stop in 2017 that "officers could not selectively enforce state laws based on racial distinctions." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). A plaintiff may assert an equal-protection claim for selective enforcement "even when there are sufficient objective indicia of

suspicion to justify the officer's actions under the Fourth Amendment." *Farm Labor Org. Cmte.* *("FLOC") v. Ohio State Hwy Patrol*, 308 F.3d 523, 533 (6th Cir. 2002) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)); *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997). It is also clearly established in the Sixth Circuit that even "consensual encounters may violate the Equal Protection Clause when initiated solely based on racial considerations." *United States v. Avery*, 137 F.3d 343, 353 (6th Cir. 1997).

To make out an Equal-Protection Clause claim of selective enforcement, a plaintiff must show that a defendant had "both a discriminatory purpose and a discriminatory effect." *Gardenhire*, 205 F.3d at 318 (citing *Futernick v. Sumpter Twp.*, 78 F.3d 1051, 1056 (6th Cir. 1996)). "Discriminatory purpose can be shown by demonstrating that the 'decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of' its adverse effects upon an identifiable group." *FLOC*, 308 F.3d at 534 (quoting *Wayne v. United States*, 470 U.S. 598, 610 (1985)). The Sixth Circuit has established a three-part test for determining if selective enforcement has occurred:

> First, [an official] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, [the official] must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.

*Gardenhire*, 205 F.3d at 319 (citation omitted). A reasonable jury could find that Plaintiff has established all three prongs. The first prong, which requires Plaintiff show that they were "similarly situated," *id.* at 319, to others who were not stopped, is satisfied by Plaintiffs' deposition testimony that a white couple was fishing at the same time as they were, and Officer Beard chose to approach Plaintiffs, a Latino family, rather than the white couple. (Martha Dep., Dkt. 45-1, at 25-27, 63-67; Guadalupe Dep., Dkt. 44-1, at 24-25.)

Contrary to Defendants' contention, Plaintiffs need not establish, nor could they be expected to know (given that they were arrested and taken from the scene), the names and citizenship status of the white individuals at the Willard Reservoir on the day in question. They have testified that the other couple was fishing and appeared to be white, and the Officers Beard and Kaufmann testified likewise, which is sufficient to show that they were similarly situated to Plaintiffs. (Guadalupe Dep., Dkt. 44-1 at 25; Martha Dep., Dkt. 45-1 at 26-27; Beard Dep., Dkt.46-1 at 78.) *See Stemler*, 126 F.3d at 873 (holding that a plaintiff made out a selective-enforcement claim because the officers knew she was a lesbian and that the heterosexual person who was driving in a car chase with her was as intoxicated as she was but only the plaintiff was charged with driving under the influence of alcohol).

Plaintiffs can also easily show that the stop had a discriminatory effect on them, as they were detained and arrested and eventually apprehended by Border Patrol. *See FLOC*, 308 F.3d at 533-34 (holding that "[a] claimant can demonstrate discriminatory effect by naming a similarly situated individual who was not investigated").

The second prong—purposeful discrimination—is of course disputed here, as Officer Beard has testified that he did not stop Plaintiffs on the basis of their race. But Plaintiffs have testified that he asked them if "they were here illegally or legally" almost immediately in the conversation, and Officer Beard admitted that he would not have asked a white person that question even if they had no identification at the time, but rather would have asked for a Social Security number, which he did not ask the Plaintiffs. (Beard Dep., Dkt. 46-1 at 103; Guadalupe Dep., Dkt. 44-1 at 36.) Nor did he ask them their names, dates of birth, or address before immediately inquiring into their immigration status, even though he testified, as did Officer Kaufmann, that such biographical information is what he would have needed to check law

enforcement databases to verify Plaintiffs' identity.  (Beard Dep., Dkt. 46-1 at 103, 138-39; Kaufmann Dep., Dkt. 48-1 at 79.)

Further, when the plaintiffs answered his question, he then "kind of smiled" and stated that he was going to "send them back to Mexico" despite not knowing of which countries the Plaintiffs were actually citizens but apparently assuming Mexico based on their appearance. (Martha Dep., Dkt. 45-1 at 32; Guadalupe Dep., Dkt. 44-1 at 36.)  And discriminatory intent is a classic issue for a jury to decide after hearing the testimony of all parties and evaluating their credibility.  *See Fowler v. Carrollton Pub. Library*, 799 F.2d 976, 984 (5th Cir. 1986) ("Motivation presents a classic jury issue."); *FLOC*, 308 F.3d at 539 (pointing out that a state trooper could still argue "that his race-neutral reasons would have caused him to investigate the plaintiffs regardless of any discriminatory motive that may have existed," but that "[t]he question of whether [the trooper's] allegedly discriminatory motive played a determinative role in the decision to investigate the plaintiffs . . . is a factual dispute best suited for resolution at trial").  Officer Beard also testified that he has never received any training at ODNR regarding how to identify noncitizens.  (Beard Dep., Dkt. 46-1 at 159.)  *See FLOC*, 308 F.3d at 535 (noting that district court credited plaintiffs' argument that "given defendants' admitted lack of training in the identification of illegal immigrants, the only reasoned basis on which to question a motorist about immigration status . . . is the motorist's Hispanic appearance coupled with indicators of Hispanic ethnicity"). (Beard Dep. Dkt. 46-1 at 20, 189-90 (acknowledging that he's had no training on immigration law or the difference between civil and criminal immigration law).)

Finally, the cases Defendant cites for the proposition that one racially motivated statement is insufficient to establish a triable issue of fact are inapposite and do not reflect Sixth Circuit case law.  In *Schroder v. Maumee Board of Education*, for instance, another judge in this

district found that, in fact, there *was* animus against the plaintiff due to his sexual orientation. 296 F. Supp. 869, 878 (N.D. Ohio 2003) (finding animus against the plaintiff but holding that defendant was entitled to summary judgment on the plaintiff's First Amendment claim because the plaintiff had not alleged that defendant's actions were motivated by animus toward his right to express himself). And the Sixth Circuit has held multiple times that a sole racially-motivated or discriminatory comment during a police encounter can be sufficient to create a triable issue of fact. *See, e.g.*, *Bennett v. City of Eastpointe*, 410 F.3d 810, 831-32 (6th Cir. 2005) (denying qualified immunity to officers who told a group of black boys they should have receipts for their bicycles when they crossed over Eight Mile Road from Detroit, a predominantly black area, to Eastpointe, a heavily white suburb ); *King v. City of Eastpointe*, 86 F. App'x 790, 803 (6th Cir. 2003) (finding triable issue of fact due to officer's use of the term "boy" with a black plaintiff). And in fact, the Third Circuit addressed the specific comment in this case and found that a jury could find that an officer's reference to plaintiffs as "Mexicans" was stated in as a pejorative racial slur and demonstrated a racially discriminatory purpose. *Carrasca v. Pomeroy*, 313 F.3d 828, 834 (3d Cir. 2002). Plaintiffs have presented sufficient evidence of Officer Beard's discriminatory motive to create a triable issue of fact as to whether he violated Plaintiffs' rights to be free from selective enforcement of the laws based on their race.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs ask the Court to deny Defendants' Motion for Summary Judgment in its entirety.

Respectfully submitted,

*/s/ Emily Brown*
Emily Brown
Mark Heller

Kathleen Kersh
Advocates for Basic Legal Equality, Inc.
525 Jefferson Ave, Suite 300
Toledo, OH 43604
Telephone: 631.897.9699
Facsimile: 419.259.2880
Email: ebrown@ablelaw.org
mheller@ablelaw.org
kkersh@ablelaw.org

*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing Plaintiffs' Response in Opposition to Defendants'

Motion for Summary Judgment was filed August 28, 2019 through the Court's Electronic Filing

System. Notice of this filing will be sent to all parties by operation of the Court's electronic

filing system. Parties may access this filing through the Court's system.


*/s/ Emily Brown*
Emily Brown (0092553)